## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MICHAEL LLOYD WORRELL,

      Petitioner,

v.                                                             Case No. 3:20-cv-373-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### I.    **Status**

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1. He is challenging a state court (Duval County, Florida) judgment of conviction for seven counts of sexual battery. He is a designated sexual predator serving a life term of incarceration. Respondents have responded. See Doc. 8;

Resp.[1] Petitioner replied. See Doc. 11. This case is ripe for review.[2]

## II.   **Governing Legal Principles**

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The

---

[1] Attached to the Response are several exhibits. See Docs. 9-1 to 9-12; S-14 The Court cites the exhibits as "Resp. Ex."

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt."

> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

4

must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided

by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with §

2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   **Relevant Procedural History and Evidence Presented at Trial**

In 2012, Petitioner was arrested and charged with seven counts of sexual battery involving three minor victims – A.E.; B.L.; and M.B. Resp. Ex. 7 at 41-42. The state later filed a second amended information charging Petitioner with ten counts of sexual battery involving the same three victims – counts one, two, and three charged Petitioner with sexual battery of B.L.; counts four, five, six, eight, and nine charged Petitioner with sexual battery of A.E.; and counts seven and ten charged Petitioner with sexual battery of M.B. Resp. Ex. 3. While the state intended to try all ten counts together, it also filed a pretrial Williams[6] rule notice asking the trial court to determine the propriety of presenting at trial evidence of the events involving all three victims. Resp. Ex. 4. After conducting a hearing on the notice, the trial court entered an order permitting the state to present "the testimony of A.E. as a witness to B.L.'s alleged abuse and vice versa; the testimony of M.B. as a witness to A.E.'s alleged abuse and vice versa; and the testimony of A.E. as a witness to M.B.'s alleged abuse and

---

[6] Williams v. State, 110 So. 2d 654 (Fla. 1959).

vice versa." Resp. Ex. 6. In support of its ruling, the trial court explained that the ten counts had not been severed for trial; the collateral acts regarding each victim were proved by clear and convincing evidence; the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the defense; the evidence suggested a pattern of behavior; and the events were close in time and similar in nature. Id.

On the morning of trial, the state advised the trial court that A.E. had gone missing and was unavailable for trial. Resp. Ex. 7 at 552. Because A.E. was unavailable, the state agreed to abandon the charges in counts four, six, and eight of the second amended information. Id. at 553. Trial counsel moved to continue the trial proceedings, but the trial court denied the request. Id. at 553-54. Petitioner proceeded to trial on the remaining seven counts.

The relevant trial testimony is summarized in Petitioner's initial brief filed on direct appeal:

> First, Detective [Larry] Baker testified that he investigated a case involving [Petitioner's abuse of] M.B. Later he identified A.E. as another possible victim, and she informed him that she had engaged in various sexual acts with the defendant in several motels in Duval County. His discussion with A.E. led him to B.L., who also gave a history of having sex with the defendant at a local motel. M.B. and B.L. do not know each other, and there is no link between them except A.E.
>
> No physical evidence was ever collected. Baker determined that the incident with B.L. occurred in

2006 based on her history of attending a carnival at a particular mall at the time. B.L. and M.B. pointed out motels to him, and he determined that one of [the motels] had no records, because it was under new management as of 2012. He made contact with the manager of an Executive Inn, who remembered the defendant and said he was one of his best customers. B.L. did not know the defendant before the single incident [of abuse].

B.L., who was 18 years old at the time of trial, testified that she met the defendant one time in the company of her then friend, A.E., when the two were in the fourth grade. B.L. spent the night at A.E.'s house one time. On that occasion, they went to a carnival at Regency Square. The defendant took them to the carnival. B.L. testified that he dropped them off at the carnival and picked them up later on. He took them to a motel and apparently already had a key. The room was on the first floor.

B.L. further testified that the defendant told them to take a bath, and A.E. ran out of the bathroom naked. A.E. was on the bed and B.L. was on the bed. B.L. said the defendant performed oral sex on her, rubbed his penis on her vagina, and put his finger inside her vagina. B.L. said she screamed and someone came to the door, and A.E. pushed her to the floor and the defendant went to the door and nothing happened. B.L. then ran into the bathroom and got her clothing. When she came out she saw A.E. and the defendant having vaginal intercourse. The defendant told her not to tell her mother until she was 40. The defendant took them back to the carnival and later on took them back to A.E.'s house. B.L. did not tell anyone what had happened except her cousin. Years later she told her mother. She was 16 when the police located her. She showed Detective Baker the motel. She did not stay in touch with A.E. She does not know M.B.

On cross-examination, B.L. testified that she

never saw the defendant again and told police she did not know who he was and did not previously identify him. B.L. said that before they went to the motel A.E. had her phone. B.L. said she knew the defendant as A.E.'s godfather.

M.B., age 17 at the time of trial, testified that she and A.E. were friends and the defendant had been her brother's teacher and her godfather. She lived in the defendant's home during seventh or eighth grade but not during summers, and at times A.E. also lived there. They were all about the same age. When she was about 13 or 14 years old, she went to a motel with A.E. and the defendant and saw them having sex. M.B. was lying down next to A.E., and the defendant touched her breast and tried to have sex with her, but that did not happen. She later went to a motel with the defendant on other occasions without A.E., maybe about ten times.

M.B. testified that they drank alcohol, smoked weed and had sex. He put his mouth on her vagina and put his penis in her vagina. The motel was near a flea market and gas station. He went and got the room key while she waited in the car and then they went into the room, usually on the first floor. The defendant would take her shopping and buy her clothes, and he also bought school clothes for her brother. She once told her mother about it, but then said it did not happen. She showed Detective Baker where some of the motels were located. She does not know B.L. She has not talked to A.E. in years. M.B. had known the defendant since she was in the fourth grade. She knew his family and they went to school together. She would go home on weekends. She and her brother lived with the defendant's family so they could go to a better school. They were all on the same family phone plan. She said the incidents with the defendant occurred during the school year; she said all of [the incidents] did not happen in the summer or in one year. At one point she told her mother what had happened, but then told her

to never mind, that it never happened. She also tried to tell her brother, but he did not listen.

Larnell Evans, A.E.'s father, testified that he knew the defendant and he called himself A.E.'s godfather. A.E. lived with the defendant between 2007-11, off and on. Mr. Evans had last spoken to A.E. three weeks earlier.

Mihir Patel testified that he manages the Executive Inn motel in Jacksonville, and that he had encountered the defendant often at the motel front desk, and that he usually came to the night window. The defendant checked into the motel alone in the evening and was not seen there in the morning. He said the defendant was one of their best customers. He preferred a downstairs room. He rented a room once or sometimes twice a week. Patel pulled records for 2011 and 2012. He did not recall seeing the defendant with another person at the motel.

. . . .

The defendant, his son and his wife testified for the defense.

D.W., the defendant's son, testified that he was 17 years old and knew both A.E. and M.B. They were in school together and became friends. To his knowledge, his Dad was never alone with A.E., M.B. or M.B.'s brother, who was also one of his friends. He had not spoken to them recently, but knew A.E. had talked to his Mom. He did not know B.L.

Alma Worrell, the defendant's wife, testified that they had been married for 26 years. She was aware that he suffered from erectile dysfunction and had done so since 2005, and took medication for that condition. Mrs. Worrell knew A.E. and M.B. and her brother and also their father. They spent time at her house on weekends. They sometimes left from her house to go to school, and

her husband would take them to school. They sometimes spent the night at her house. Her husband was never alone in the house with them. She had no contact with M.B. since the allegations were brought, but A.E. called her. She did not know B.L.

Mr. Worrell, age 64 at the time of trial, testified that he was a school teacher from 2005 until 2012 after serving 30 years in the Navy. He had known his wife for 30 years. He has four older children in addition to D.W. He denied any sexual activity with any of the girls and said he did not know B.L. He does know A.E. and M.B., and had known them since they were in about third grade. He tutored math and also gave M.B. and her brother rides home from school. At times he also picked them up in the morning before school. He met A.E. under different circumstances, and also tutored her. The children all became friends. M.B.'s mother worked on weekends, and A.E.'s father was a single parent, so the kids would come over and hang out on weekends. They functioned as a family. At times his wife had problems with the kids being around. There were other family members around as well, and she cooked for all of them. He paid the kids to help with one of his side businesses, and when the kids were in middle school, M.B. and her brother came to stay with his family so they could go to a better school. They stayed over on week days and went home on weekends. A.E. did not go to the same middle school, and he would pick her up and take her to school. The children were in need so he tried to help. He purchased school clothing for them at times. He did not expect anything from them in return.

Mr. Worrell did recall taking A.E. and another girl to a carnival in November, 2006. He dropped them off and gave them money. He picked them up and went to Larnell Evans's home for a while. He could not say who the other girl was. He did stay at the Executive Inn once or twice a week because he suffered from PTSD and got upset at times, so he went there to be alone. He

> did not take anyone with him. The girls would have
> known that he went there because of the receipts in his
> car. Sometimes money was missing from his truck.
> Sometimes he stayed at the motel all night. He would
> get the key and watch movies and have a drink and that
> was it. The kids did not stay over at his house very often
> during the summer months. He did not behave
> inappropriately with M.B., B.L., or A.E. Mr. Worrell
> testified he only went to one motel.

Resp. Ex. 12 at 2-10 (record citations omitted).

Following closing arguments, the jury found Petitioner guilty of the capital sexual battery offenses charged in counts one, two, three, and five, as well as the first degree sexual battery offenses charged in counts seven, nine, and ten. Resp. Ex. 7 at 200-06. The trial court adjudicated Petitioner as a sexual predator and sentenced him to a mandatory life term of incarceration as to counts one, two, three, and five, and a thirty-year term of incarceration as to counts seven, nine, and ten. Id. at 428-38. Petitioner, with help from appellate counsel, sought a direct appeal, and the First District Court of Appeal affirmed his judgment and sentences without a written opinion. Resp. Ex. 15. Petitioner filed with the state court a Florida Rule of Criminal Procedure 3.850 motion, which the trial court summarily denied. Resp. Ex. 24. Petitioner appealed the trial court's order, and the First DCA affirmed the denial through a written opinion. Resp. Ex. 30. The Petition followed.

## IV.   **The Petition**

### A. Ground One

Petitioner argues his trial attorney was ineffective for failing to object to or seek to exclude A.E.'s testimonial statements introduced at trial through other witnesses' testimony. Doc. 1 at 16. According to Petitioner, "[b]efore trial, A.E. recanted her testimony . . . and became unavailable for trial." Id. He contends Detective Baker testified to statements A.E. made to him during his investigation and B.L. testified to alleged statements A.E. made during Petitioner's alleged assault of both B.L. and A.E. Doc. 11 at 4-3. Petitioner argues this evidence, and all charged counts involving A.E., should have been prohibited and dismissed because the jury could not observe A.E.'s demeanor and consider her credibility; and presentation of her hearsay statements violated Petitioner's confrontation rights. Doc. 1 at 16-17.

Petitioner admits that he did not present this claim to the state court, and thus it is unexhausted and procedurally defaulted. Id. at 12. But he attempts to overcome this procedural default by relying on Martinez v. Ryan, 566 U.S. 1 (2012), and arguing he can show "cause" to excuse his default because he did not have counsel when he filed his Rule 3.850 motion. Id. Under Martinez, Petitioner must prove more than the general assertion that the trial court did not appoint counsel in the initial-review collateral proceeding. Martinez, 566 U.S. at 14. Petitioner must "also demonstrate that the underlying ineffective-

assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. (citations omitted); see also Lambrix v. Sec'y Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). On the other hand, his claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." Id. at 16. For the reasons that follow, the Court finds that even if Petitioner shows that his lack of postconviction counsel caused his procedural default, he cannot show that his underlying ineffective assistance of counsel claim is substantial.

Prior to jury selection in March 2015, the state advised the trial court that A.E. was reported missing and believed to be a runaway. Resp. Ex. 7 at 552-54. According to the state, A.E. had not been seen by her family since the end of January and state investigators could not locate her. Id. Considering her disappearance, the state advised trial counsel of its intent to abandon the charged offenses in count four (sexual battery of A.E. by "placing his mouth on her vagina"); count six (sexual battery of A.E. by "placing his penis in her anus"); and count eight (sexual battery of A.E. by "placing his penis in her anus") of the second amended information; but it intended to proceed on count five (sexual battery of A.E. by "placing his penis in her vagina") and count seven (sexual battery of A.E. by "placing his penis in her vagina") as evidence of those offenses would be presented through testimony of other witnesses. Id. at 553-54; see also Resp. Ex. 3. The state also advised it intended to call as a witness A.E.'s father

who would testify to A.E.'s date of birth and that she is missing. Resp. Ex. 7 at 553. Trial counsel advised he knew A.E. was missing, explained defense investigators also could not find her, and noted that the trial court had granted his prior requests for continuances. Id. at 555-56. Trial counsel also advised that he did have an opportunity to depose A.E. before trial. Id. at 556-57. Despite these facts, trial counsel requested another continuance because A.E. was unavailable. Id. at 553-54.

The trial court then acknowledged that it had granted many of trial counsel's requests for continuance, over the state's objection, in hopes of locating A.E. but that the parties and the court set a hard trial date because the case had been pending since 2012. Id. at 557-10. The trial court explained that it understood trial counsel's request to again continue trial in hopes of locating A.E. but advised she had not been found by either her family or the parties' investigators for two months. Id. at 558-59. It added that because of those circumstances and the three-year pendency of the proceedings, it would not continue the trial again. Id. In response, trial counsel argued that the other two victims intended to testify about what they witnessed between Petitioner and A.E., and thus Petitioner had a Sixth Amendment right to confront A.E. about those issues and her unavailability required dismissal of counts five and seven. Id. at 560. The trial court responded:

> THE COURT: Well, I don't think, and unless you can

all show me case law to the contrary, the Sixth
Amendment right . . . to confront witnesses against you
is just that, to confront the witnesses against you. It
doesn't have to be the alleged victim in the count. If
there are witnesses that the state intends to prove, and
I don't know who they are or how many there are, but
if they have witnesses that they intend to introduce to
prove up the elements of Count 5 and Count 7, then
clearly Mr. Worrell will have the right to confront those
witnesses by cross-examining them.

I don't believe the Sixth Amendment or any case law --
and, again, unless you all can show me to the contrary
-- says the actual victim of the alleged crime has to be
presented, because we all know that victims of crimes
often don't show up in cases, can be proven without
their assistance and without their presence at trial,
domestic battery, for instance, and other such charges.

So I don't think that alone would preclude the state
from going forward on Counts 5 and 7 or from this
Court going forward on Count 5 and 7, assuming
evidence and testimony is sufficiently pled and proven.

If it's not, that is what a JOA is for, and that is where I
would then come in. And if it is, then that is what the
jury's decision will be, to decide whether the state has
proven those two counts beyond a reasonable doubt.

If -- who are the witnesses -- if either [ ] or [ ] can provide
enough testimony or evidence to prove the allegations
in Counts 5 and 7, then they would go forward.

I don't think it requires [A.E.] to have to be here for
Count 5 and Count 7 to go forward.

Resp. Ex. 7 at 561-62. Trial counsel then argued that during the Williams rule

hearing, one reason the state sought to introduce A.E.'s testimony was to

identify Petitioner as the abuser of [B.L.] Id. at 562. The trial court then

acknowledged that reasoning but also explained that other alleged victims may be able to identify Petitioner through other evidence and thus A.E.'s testimony was unnecessary for that purpose. <u>Id.</u> at 562-63.

In light of this record evidence, and contrary to Petitioner's assertions here, trial counsel did argue, although unsuccessfully, that the state should have abandoned all charges involving A.E. because A.E. was unavailable for trial. Also, there is no record evidence that testimonial statements by A.E. were introduced through other witnesses' trial testimony. Detective Baker did not testify to any pretrial statements A.E. made to him during his investigations. Resp. Ex. 7 at 730-46. Indeed, the only statements Baker made during trial that alluded to his discussions with A.E. were that after he interviewed A.E., he identified two other potential victims. <u>Id.</u> at 734. Further, neither B.L. nor M.B. testified to improper testimonial statements by A.E. Rather, each victim testified that on separate occasions, they witnessed Petitioner having sexual intercourse with A.E. <u>Id.</u> at 757, 790. In other words, B.L. and M.B. offered "straight-forward eyewitness testimony." <u>United States v. Marshall</u>, 259 F. App'x 855, 861 (7th Cir. 2008). They had first-hand knowledge about the facts to which they testified, and Petitioner's ability to cross-examine them about what they witnessed between A.E. and Petitioner satisfied his confrontation rights.

As such, Petitioner cannot establish that his trial counsel acted deficiently or that counsel's alleged erroneous conduct resulted in prejudice to Petitioner. Because this claim is insubstantial and lacks merit, Petitioner cannot rely on <u>Martinez</u> to excuse the procedural default of this claim. Likewise, Petitioner has failed to demonstrate that failure to consider this claim will result in a fundamental miscarriage of justice. Ground One is due to be denied.

**B. Ground Two**

Petitioner argues his trial counsel was ineffective for failing to object to B.L.'s out-of-court and in-court identifications of Petitioner as her abuser, which were not based on her independent recollection. Doc. 1 at 17. According to Petitioner, during law enforcement's initial investigation into Petitioner's alleged assault of B.L., B.L. did not identify Petitioner during officers' "showup" because her alleged assault occurred six years earlier. Instead, B.L. was able to only identify her assailant as "A.E.'s godfather" who she had met once. <u>Id.</u> Petitioner argues officers then engaged in "suggestive out of court procedures" and used the show up to advise B.L. that Petitioner is A.E.'s godfather. Petitioner asserts officers' suggestive identification measures then led to B.L. making an in-court identification of Petitioner as the individual who abused her. <u>Id.</u> He contends that counsel should have moved to suppress evidence of B.L.'s identification testimony as it was tainted by officers' impermissible actions.

Petitioner again admits that he did not present this claim to the state court and thus it is unexhausted and procedurally defaulted. Id. at 12. But he attempts to overcome this procedural default by relying on Martinez and arguing he can show "cause" to excuse his default because he did not have counsel when he filed his Rule 3.850 motion. Id. But the Court finds that even if Petitioner could show that his lack of postconviction counsel caused his procedural default, he cannot show that his underlying ineffective assistance of counsel claim is substantial.

Here, Petitioner does not point to any record evidence that during their investigation, officers presented to B.L. an out-of-court "show up" either through an in-person lineup or a photo lineup, and the Court can locate no such evidence in its review of the record. In any event, assuming law enforcement employed such procedures during their investigation, an out-of-court identification is subject to exclusion if the identification procedure was unduly suggestive such that it created a substantial risk of misidentification. Neil v. Biggers, 409 U.S. 188, 199 (1972). In determining whether an identification violates due process, a court undertakes a two-part analysis. "First, we must determine whether the original identification procedure was unduly suggestive . . . . If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the

identification was nonetheless reliable." <u>Cikora v. Dugger</u>, 840 F.2d 893, 895 (11th Cir. 1988) (citing <u>Biggers</u>, 409 U.S. at 199).

In <u>Biggers</u>, the United States Supreme Court identified five factors to be considered in determining whether the identification was reliable. They are: the witness's opportunity to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the description of the suspect, the level of certainty of the identification, and the length of time between the crime and the identification. <u>See</u> <u>Biggers</u>, 409 U.S. at 199. In <u>Manson v. Brathwaite</u>, 432 U.S. 98 (1977), the Supreme Court stated that absent "a very substantial likelihood of irreparable misidentification," the identification of a suspect by a witness is evidence for the jury to weigh. <u>Id.</u> at 116.

During trial, B.L testified that she only met Petitioner one time, the same day he sexually abused her, and she never saw him again after the assault. Resp. Ex. 7 at 748-50. But B.L. testified that she could recognize Petitioner if she saw him again and she made an in-court identification of Petitioner as her abuser. <u>Id.</u> at 748. B.L. then provided detailed testimony of the events surrounding Petitioner's actions. <u>Id.</u> at 750-61. During cross-examination, B.L. testified that she told police she did not know Petitioner when he abused her and at no point did she ever identify him to police. <u>Id.</u> at 762. But on re-direct, B.L. testified that on the day that the incident occurred, she met Petitioner at A.E.'s house, she knew him as A.E.'s godfather, and he had introduced himself

24

to her as "Michael."[7] Id. at 782-83.

Under the totality of the circumstance, B.L.'s in-court identification of Petitioner was reliable. She clearly remembered specific details of the incident and there is no evidence that her testimony stemmed from any outside influence. Trial counsel tried to test her credibility by eliciting testimony that B.L. did not know who Petitioner was but those statements, in context, did not suggest she could not recognize Petitioner. Rather, they suggested that her one and only interaction with Petitioner was on the day he assaulted her. As such, the Court cannot find that trial counsel acted deficiently in failing to move to suppress B.L.'s identification of Petitioner. And to that end, because this claim is insubstantial and lacks merit, Petitioner cannot rely on Martinez to excuse the procedural default of this claim. Likewise, Petitioner has failed to demonstrate that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. Ground Two is due to be denied.

## C. Ground Three

Petitioner argues that the trial court erred in denying his request for a continuance before jury selection when the state could not locate A.E. for trial. Doc. 1 at 18. According to Petitioner, during the pretrial Williams rule hearing,

---

[7] The trial transcript shows that at the time of the incident, she identified Petitioner through other information, but that information has been redacted. Resp. Ex. 7 at 782-83.

the trial court and the parties clarified that A.E. was the only connection between the alleged offenses involving B.L. and M.B., and the entire case, including Petitioner's defense strategy, was altered when A.E. failed to appear for trial. Id. Petitioner argues that without A.E., there was no basis for the state to pursue a single trial for the offenses involving the other two victims, especially considering B.L.'s prior inability to identify Petitioner. Id.

Petitioner, with help from appellate counsel, raised this claim as his sole issue on direct appeal.[8] Resp. Ex. 12. The state filed an answer arguing:

> The initial problem with the argument advanced by the appellant is that, despite the wording of the issue statement, the appellant in substance attempts to assert an argument that the charges were improperly joined. The appellant, plainly aware that the offenses were charged in one information, never filed a motion to sever the charges. Motions for severance are waived if not timely raised. Brooks v. State, 762 So. 2d 879, 890 (Fla. 2000) (citing Fla. R. Crim. P. 3.152 (a)) (further citation omitted).

> The decision to decline the appellant's request for another continuance was not "arbitrary, fanciful, or unreasonable." White [v. State], 817 So. 2d [779,] 806 [(Fla. 2002)]. To prevail on his motion [for continuance], the appellant was required to demonstrate:

> > (1) prior due diligence to obtain the witness's presence; (2) that substantially

---

[8] In his initial brief on direct appeal, Petitioner raised this claim in terms of state law only and did not reference a due process violation or any other federal constitutional right. See generally Resp. Ex. 12. Respondents, however, do not argue that Petitioner failed to exhaust the federal nature of this claim and instead address the claim on the merits. Resp. at 21-22. Considering the Response, and for purposes of this Order, the Court considers this claim exhausted.

favorable testimony would have been forthcoming; (3) that the witness was available and willing to testify; and (4) that the denial of the continuance caused material prejudice.

Geralds [v. State], 674 So. 2d [96,] 99 [(Fla. 1996)] (citations omitted). Here, the record contains no showing by the appellant that A.E. was willing to testify or was capable of being located. Nor does the record contain a showing that A.E. would have provided testimony favorable to the appellant.

Moreover, contrary to the argument by the appellant, the transcript of the ruling reveals that the trial court's concern extended beyond "efficiency and practicality." The trial court stated:

This was a September 2012 arrest, and for the very reason that we try to put cases on the trial docket sooner rather than later, that is to prevent witnesses from disappearing, here is in fact what we have now.

I understand your request, you want to continue because A.E. is not available, but there is no guarantee that she might be found that she might be picked up on that order or as a result of that [sheriff's office] bulletin.

In other words, the trial court's concern extended to the ability to secure at a later date the presence of the witnesses who were present and were prepared to testify. Having balanced this concern against the uncertainty that A.E. would be found, the court declined to continue the trial.

Because the appellant is unable to sustain his burden of showing that the trial court judge abused her

27

>discretion, this Honorable Court is requested to affirm
>the judgment and sentence entered in this matter.

Resp. Ex. 13 at 8-10 (record citations omitted). The First DCA per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. 15. The Court addresses this claim under the deferential standard for federal court review of state court adjudications.

The Supreme Court has stated that "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process . . . ." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). Thus, "a constitutional violation occurs only where the court exhibits an unreasoning and arbitrary insistence upon expeditiousness in the face of [a] justifiable request for delay." United States v. Bonilla-Siciliano, 643 F.3d 589, 591 (8th Cir. 2011) (internal quotation marks and citation omitted). "To prevail, [Petitioner] must establish that the court's decision was so egregious that it was fundamentally unfair." Id. (internal quotation marks and citation omitted).

Here, the trial court's denial of Petitioner's request for a continuance was not fundamentally unfair. Petitioner was always aware that the case involved three victims; all versions of the charging document included charges involving all three victims; Petitioner never sought to sever the counts involving B.L. and M.B. from those involving A.E.; and the evidence presented at trial supported

28

Petitioner's convictions for the separate offenses involving A.E., M.B., and B.L. As such, upon review of the record, the Court concludes that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Three is denied.

### D. Ground Four

Petitioner argues that his trial counsel was ineffective for failing to adequately investigate and/or present testimony from physicians who unsuccessfully treated Petitioner for erectile dysfunction and conducted psychosexual evaluations on Petitioner. Doc. 1 at 18.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. 23 at 28-33. The trial court summarily denied the claim. Resp. Ex. 24 at 6-7. Petitioner appealed, and the First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. 30. The First DCA addressed this issue:

> Michael Worrell was convicted on seven counts of sexual battery against two young girls. Worrell filed a postconviction motion alleging six reasons that his trial counsel was ineffective, which the postconviction court summarily denied. On appeal, we affirm the summary denial, but write to address Worrell's claim that counsel was ineffective for failing to present the testimony of two doctors who would have supported his defense.
>
> To prevail on an ineffectiveness claim, a

defendant must show that counsel's performance was deficient and prejudicial; counsel's errors must have been so serious that the Sixth Amendment's guarantee of counsel was not satisfied and the defendant was deprived of a fair trial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). If a defendant asserts ineffectiveness due to counsel's failure to call, interview, or investigate witnesses, he must allege the testimony that could have been elicited from the witness and how the failure to elicit this testimony caused prejudice. See Nelson v. State, 875 So. 2d 579, 583 (Fla. 2004). If this claim is legally sufficient, an evidentiary hearing is required unless it is conclusively refuted by the record. See Franqui v. State, 59 So. 3d 82, 95 (Fla. 2011).

Worrell claimed that counsel should have called Dr. Neidigh, who had conducted a psychosexual evaluation of Worrell and would have testified that he had no propensity to molest children. Worrell also claimed that counsel should have called Dr. Kirk, who would have testified that he had treated Worrell, unsuccessfully, for erectile dysfunction, thus rendering dubious the victims' allegations.

"Typically, it will be necessary to hold an evidentiary hearing to determine why trial counsel did not call a particular witness." Terrell v. State, 9 So. 3d 1284, 1288-89 (Fla. 4th DCA 2009). However, summary denial is appropriate when the record shows that the defendant knew of potential witnesses and told the trial court that he did not wish to call additional witnesses. See McIndoo v. State, 98 So. 3d 640, 641 (Fla. 4th DCA 2012) ("Because his sworn motion indicates that he was aware of the witness and that witness's testimony prior to trial, the colloquy to the court conclusively refutes his claim that his attorney failed to call a known witness against the appellant's wishes. He is bound by his answers to the court."). Similarly, in Terrell, the defendant told the trial court that he did not wish to call additional witnesses and had not asked counsel to

call or locate any before making contrary claims in his postconviction motion. 9 So. 3d at 1287. The Fourth District found that the claims were properly denied summarily because "the defendant assured the court that there were no other witnesses he wanted to call in his defense" and is "bound by his sworn answers during the colloquy." Id. at 1289. At trial, the court asked Worrell if he wished to call any additional witnesses and Worrell named two – neither being Drs. Neidigh or Kirk – but stated that they were unfortunately unavailable. On [his Rule 3.850] appeal, he "admits that during trial . . . he had neglected to recollect that Drs. [Neidigh and Kirk] and others should have been called as additional witnesses for his defense." As defendants cannot go behind their colloquy statements, we cannot permit them to do so by asserting that they simply forgot about potential witnesses during trial and now, in postconviction proceedings, remember them and their potential testimony.

Even had the record not conclusively refuted Worrell's claims, he would not be entitled to an evidentiary hearing. Dr. Neidigh's potential expert opinion testimony as to Worrell's propensities or characteristics is not admissible. Section 90.405, Florida Statutes, governs the admission of character evidence and "does not permit evidence of character to be made by opinion." Wyatt v. State, 578 So. 2d 811, 813 (Fla. 3d DCA 1991). In Wyatt, the defendant faced allegations similar to Worrell and intended to call a clinical psychologist "to testify that the defendant does not fit the profile of a pedophile," the trial court excluded the testimony, and the Third District held that "the defendant sought to introduce evidence of his character through the expert opinion of a psychologist, which is not permitted by the statute." Id. at 812-13. Our rules of evidence would not have permitted Dr. Neidigh to opine on whether he believes Worrell has the characteristics of a child molester. As to Dr. Kirk, who Worrell claims could have testified that he suffered from erectile dysfunction, the postconviction court

found that any potential deficiency cannot be found to have prejudiced Worrell. Given that Worrell and his wife both testified as to this issue, the two victims did not know each other and gave extremely similar accounts of their experiences of Worrell bringing them to a hotel to have sex, and other evidence presented, such as a hotel owner's testimony that Worrell often rented a room in the most private area of the hotel, we agree with the postconviction court that there is not a reasonable probability that Dr. Kirk's testimony would have changed the outcome of the trial.

Worrell's claim that counsel was ineffective for failing to present two witnesses is conclusively refuted by the record, and we decline to permit defendants to go behind their representations to the trial court by asserting a lapse in memory. Even had Worrell's claims not been refuted by the record, summary denial was proper. Therefore, we affirm the denial of his postconviction motion.

AFFIRMED.

Resp. Ex. 30; see also Worrell v. State, 281 So. 3d 1275 (Fla. 1st DCA 2019).

The Court addresses these claims under the deferential standard for federal court review of state court adjudications. As the state court noted, during trial, the trial court asked Petitioner whether there were any other witnesses he wished to call in his defense. Resp. Ex. 7 at 876. Petitioner replied that he wished to call Dr. Tiomico but explained that she was unavailable because she was out of the country addressing a family emergency. Id. According to Petitioner, she would have testified that she prescribed Petitioner medication for his erectile dysfunction. Id. The trial court acknowledged his

concern but noted Petitioner's wife testified about his prescribed medication for erectile dysfunction, thus he presented that evidence to the jury without Dr. Tiomico. Id. Petitioner agreed with the trial court's reasoning and mentioned no other expert witnesses he wished to call in his defense.[9] Id. Thus, Petitioner cannot demonstrate that but for trial counsel's alleged error, the outcome of his trial would have been different. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Four is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals the dismissal of this case, the Court denies a

---

[9] Petitioner did state that he would have liked to call Charles Burgess, an inmate of the Duval County Jail, as a witness but explained that Burgess was also not available to testify. Resp. Ex. 7 at 876-77.

certificate of appealability.[10] Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of August, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Michael Lloyd Worrell, #J55039
      Counsel of record

---

[10] The Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, the Court will deny a certificate of appealability.